STOULIG, Judge.
This is an appeal from a judgment dismissing plaintiffs’ damage claims against Liberty Mutual Insurance Company under the uninsured motorist provision of an automobile liability policy issued to Charles DiGerolamo on a 1967 Pontiac Lemans. This result is based on an affirmative defense that the policy was void because the named insured had no insurable interest in the automobile at the time the policy was issued.
We affirm. The record reflects that the car was owned by Nicholas DiGerolamo although the insurance was purchased in his father’s name. On August 15, 1967, seven days before Nicholas’ twenty-first birthday, Paretti Pontiac accepted a $1,000 deposit toward the purchase of this car and issued a *623 receipt in the name of Nicholas.[1] Two days later, Nicholas signed and filed an application for a certificate of title and passenger car registration for this vehicle, listing his address as 1021 Royal Street, New Orleans, Louisiana.[2]
The record discloses that the 1967 Pontiac Lemans was purchased on August 15, 1967. Immediately thereafter Charles DiGerola-mo applied for insurance as owner. On August 22, 1967 Nicholas DiGerolamo reached the age of majority. A policy of insurance covering the vehicle was issued by the defendant to Charles DiGerolamo for the period commencing September 7, 1967. The accident from which plaintiffs’ UMI claims stem occurred October 8, 1967.
Based upon the foregoing, together with the receipt of Paretti Pontiac and the application for registration and title, it must be concluded that Nicholas purchased the automobile on August 15, 1967. Further, while his father’s application for insurance on this car was still pending and prior to the issuance of the insurance policy Nicholas reached the age of majority. All of these activities predated the occurrence of the accident.
The issue presented by this appeal is whether or not Charles DiGerolamo had an insurable interest in the automobile owned by his major son. R.S. 22:614(A) and (B) provide:
“A. No contract of insurance on property or of any interest therein or arising therefrom shall be enforceable except for the benefit of persons having an insurable interest in the things insured.
“B. ‘Insurable interest’ as used in this Section means any lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage.”
The controlling jurisprudence construing this statute is exhaustively treated in the case of Rube v. Pacific Insurance Company of New York, 181 So.2d 240 (La.App. 1st Cir. 1961).
Appellants’ argument that the named insured Charles had an insurable interest to the extent that he could protect himself against liability he might incur vicariously through the torts of his minor son may have had merit if the policy was effective in a period when Nicholas was a minor. But this was not the case. Once Nicholas attained majority, which he did almost immediately after buying the car, his father had no more exposure for the negligent acts of this son.
Appellants’ second argument again rests on a premise of minority. Therefore we need not discuss their sole contention that an insurable interest accrues to the father if the purpose for purchasing the insurance is to protect the minor’s estate from insolvency in the event of his death.
For the reasons assigned, the judgment appealed from is affirmed.
AFFIRMED.
LEMMON, J., dissents with written reasons.
LEMMON, Judge, dissents and assigns reasons.
On August 15,1967 Nicholas DiGerolamo, who was then 20 years old, single, and residing with his parents, purchased a Pontiac automobile on credit, and his father co-signed the note. Around the same time the father’s liability insurance on a Nash *624 automobile was about to expire, and he completed a standard form application for the assigned risk plan. In the section requesting “Description of ALL motor vehicles owned by applicant or any member of the same household” the father listed both cars and indicated the applicant was the owner of each.[1] However, the son was listed in the application as a customary operator. The policy was subsequently issued on September 7, after the son had attained majority.
When a casualty occurred and Nicholas and two passengers attempted to recover damages for bodily injury under the uninsured motorist coverage, the insurer resisted enforcement of the policy on the basis that Nicholas’ father had no insurable interest, claiming the representation concerning ownership was willfully false, was material to the risk and was relied upon in issuing the policy, but not explaining any detriment from such reliance.

Insurable Interest

The legislative concept of prohibiting enforceability of insurance contracts to persons not having an insurable interest had its beginnings in the public policy against enforcement of a wagering contract. The Louisiana statute was written in terms of “interest in the things insured” and “economic interest in the safety or preservation of the subject of the insurance”, indicating a primary concern for interest in the property named in the policy.
I doubt that an insurable interest is required by R.S. 22:614 for enforcement of a contract of liability insurance, since there is no possibility of wagering involved in that type of contract. See 1 ALR 3d 1193 (1965). Since the statute can reasonably be construed as inapplicable to liability insur-anee, the construction which gives validity to the contract should be applied. Nevertheless, if an insurable interest is required to enforce a liability policy, it cannot reasonably be argued that insurable interest depends upon title. Rather, a key inquiry must be whether there is any possibility the insured might incur liability because of the operation or use of the automobile. See 7 Am.Jur.2d Automobile Insurance § 13. Another pertinent consideration is whether the insured may suffer a loss or disadvantage arising from imposition of liability on a close family member because of operation or loss of the automobile.
At the time Nicholas’ father applied for insurance he certainly had an economic interest in insuring his potential liability for his son’s torts arising out of use of the Pontiac. And at the time of the accident the father, as a potential forced heir of his son’s estate, had an economic interest in preserving that estate against tort claims arising from the son’s use of that automobile, and thus he had an economic interest in insuring his son’s liability.[2]
Inasmuch as the insurable interest requirement is primarily to prohibit wagering contracts, I would (in the absence of a showing of prejudice to the insurer) liberally interpret any indicia of insurable interest among close family members residing in the same household, where the overall evidence indicates that the policy was obtained in good faith.

Prejudice to the Insurer

The more critical question in this case is whether Nicholas or his father should be estopped from enforcing the policy because of misrepresentations relied upon by the insurer in issuing the policy. Indeed, the insurer in its amended answer pleaded lack *625 of insurable interest in estoppel terms of willful false statements, material to the risk, and reliance thereon.
I have difficulty in concluding on this record that any statements in the application were willfully falsified or made with intent to deceive. See R.S. 22:619, which requires intent to deceive in order to prevent enforcement of the contract. There is no suggestion in the record or in argument of any advantage to the insured or prejudice to the insurer from the incorrect statement as to ownership.
The insurer argues only that, if it had known the true ownership, it would not have included the Pontiac in the father’s policy. It does not state any detriment suffering in doing so, and the fact that Nicholas was listed as a customary driver of both cars also militates against a conclusion of intent to deceive. Moreover, the insurer does not argue that it would not have issued separate policies to each owner of the two cars, nor does it contend that the premium structure would have been different had two policies been issued rather than one.[3]
The burden of proving the facts to establish an estoppel is on the party relying on estoppel as a defense. Here, the insurer failed to show how it relied to its detriment on any misrepresentation and further failed to show that the incorrect statement was made with the intent to deceive.[4]

. In his testimony Nicholas stated that the $1,000 deposit was advanced by his aunt. He denied that Paretti Pontiac had issued to him a receipt in this amount. Upon being shown the receipt in his name he persisted in his denial of having paid the money or receiving a receipt for it. Obviously either Nicholas or his father told Paretti in whose name to issue the receipt.

. Nicholas DiGerolamo testified that he did not have the title to the car nor did he make any attempt to get the title from Baton Rouge. In a subsequent hearing, his attorney voiced no objection to the introduction of the application for a certificate of title admittedly bearing the signature of Nicholas DiGerolamo. The application was made on August 17, 1967, two days after the purchase of the automobile and reflects its acquisition from Paretti Pontiac with the owner being Nicholas DiGerolamo.

. The application was completed by the insurance agent, presumably using information furnished by the applicant who signed the form. The applicant, Nicholas’ father, died prior to trial.

. See Dugas v. Rogers, 285 So.2d 876 (La.App. 1st Cir. 1973), in which the court found insurable interest when Jesse Rogers purchased an automobile in his name to be used exclusively by his brother, James, and Jesse also purchased liability insurance. The court noted that Jesse had an interest in protecting his parents from vicarious liability for the torts of their minor son, because Jesse thereby was protecting an estate to which he was a forced heir. Compare 43 Am.Jur.2d Insurance § 475, concerning property insurance.

. Perhaps the insurer would have a complaint against the Assigned Risk Plan for covering two risks with credit for only one.

. See Christo v. Eagle Star Ins. Co., 232 La. 28, 93 So. 682 (1957), in which Christo permitted his minor cousin to purchase a car in his name, and Christo also purchased the collision insurance required by the mortgagee. The court held there was no showing of intent to deceive the insurer as to the driver of the car.